IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

JAMES D. WILLIAMS                                                                PLAINTIFF

v.                                      Civil No. 4:18-cv-04059

SHERIFF JACKIE RUNION, Miller County,
Arkansas; WARDEN JEFFIE WALKER,
Miller County Detention Center ("MCDC");
CAPTAIN GOLDEN ADAMS, MCDC;
SERGEANT ALLEN GRIFFEN, MCDC;
LIEUTENANT MILLER, MCDC; and
SERGEANT GUTHERIE, MCDC                                                  DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro* se by Plaintiff, James D. Williams, under 42 U.S.C. §

1983.  Before the Court is a Motion for Summary Judgment filed by Defendants Runion, Walker,

Adams, Miller and Gutherie.[1]   (ECF No. 27).  Plaintiff has filed a Response. (ECF No. 31).

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey,

Chief United States District Judge, referred this case to the undersigned for the purpose of making

a Report and Recommendation.

### I. FACTUAL BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC"),

Tucker Unit.  Plaintiff's claims in this action arise from alleged incidents that occurred while he

was incarcerated in the Miller County Detention Center ("MCDC") in Texarkana, Arkansas.

Plaintiff was booked into the custody of the MCDC on January 29, 2018, on a warrant

---

[1] To date, Defendant Griffen has not been served.  On October 11, 2019, the undersigned issued a Report and
Recommendation recommending Griffen be terminated as a defendant in this lawsuit for lack of service. ECF No.
33.

charged with Failure to Register and a hold for a Parole Violation.  (ECF No. 29-1, p. 1).

On February 21, 2018, Plaintiff submitted a medical request about nasal congestion, itching eyes, and a headache.  (ECF No. 29-3, p. 1).  Plaintiff was seen and treated that same day by medical personnel.  *Id.*

On March 2, 2018, Plaintiff submitted a medical request about nasal congestion and a headache.  (ECF No. 29-3, p. 2).  Nurse Chelsey responded telling Plaintiff he was just seen and treated for these conditions and he could buy ibuprofen "off commissary".  *Id.*  On March 20, 2018, Plaintiff submitted a medical request relating to a sinus headache and a request for medication.  (ECF No. 29-3, p. 3).  On March 30, 2018, Plaintiff submitted a medical request about head pain and a sore throat.  (ECF No. 29-3, p. 4).

On April 3, 2018, Plaintiff submitted a grievance, stating "On 3-2-2018 I was called to lt. Miller office due to my legal mail being opened on 3rd shift and not in my presence – this is a violation of legal mail policy."  (ECF No. 29-3, p. 5).  The responding officer stated, "I have forwarded your request to the appropriate authority."  *Id.*

On April 11, 2018, Plaintiff submitted a medical request concerning a headache lasting over two weeks and requested further examination.  (ECF No. 29-3, p. 6).  Plaintiff was seen that same day by Nurse Chelsey.

On April 24, 2018, Plaintiff filed his original Complaint in this lawsuit.  (ECF No. 1). Because Plaintiff attempted to file the lawsuit on behalf of himself and eighteen other inmates, the Court entered an order that same day severing each individual and opening a separate case for each plaintiff.  (ECF No. 2).  This order directed Plaintiff to file an Amended Complaint asserting only his claims and to submit an *in forma pauperis* application.

On May 1, 2018, Plaintiff submitted the following grievance stating:

2

I've been here since 1-29-18 and the shower in max d has mold on it, we get the cleaning cart, but we get no chemicals to clean with, not even soap to mop with!...water out of the shower is not a cleaning agent 'it's just water' we need something to clean the shower with and remove the mold.

(ECF No. 29-3, p. 7).  On May 16, 2018, the responding officer stated, "We appreciate your concern regarding sanitation. Please keep in mind that you are responsible for the cleanliness of your area. We can assure you that adequate cleaning supplies are readily available upon request from the unit officer."  *Id.*

On May 2, 2018, Plaintiff submitted a grievance stating:

Warden Walker, Cpt. Adams, Lt. Miller – the basis of this matter is associated with our living conditions being extremely unsanitary to live in. our blankets are ever laundered or switched out, the vent system leaks water, the roof tiles are sodden from leaks in the roof, the bean chute has rust on it which is where they serve our food 3 times a day, black mold in shower among other places, fire sprinklers not recharged and they leak constantly. Please fix the issues soon.

(ECF No. 29-3, p. 8).  In response, on May 17, 2018, Defendant Adams stated:

Are the laundry bags not large enough to place your blanket in?  Hanning addressed the water issue from the condensation build up from the air condition.  I will submit a request to maintenance about the bean holes.  When I did my walk through there was no leaks from fire sprinklers anywhere in MD which cells have this problem. They system is primed in case of a fire.

*Id.*

On May 15, 2018, Plaintiff filed his Amended Complaint.  (ECF No. 4).

On May 20, 2018, Plaintiff submitted a medical request about head pain and a runny nose.

(ECF No. 29-3, p. 9).  Plaintiff was seen and treated that same day by medical personnel.

On May 21, 2018, Plaintiff was transferred to the custody of the ADC.  (ECF No. 29-2, p. 1).

On April 22, 2019, Plaintiff gave his sworn testimony in a deposition.  (ECF No. 29-6, pp.

3

1-75).  Plaintiff testified once a week, inmates at the MCDC were given cleaning supplies which included a broom and a dust mop.  He stated they had to use the shower water to clean because they were rarely given any cleaning chemicals.  *Id.* at pp. 24-25.  He also testified when MCDC officers provided cleaning chemicals, it was something like Pine-Sol in a big tank with a pump on it and the officer on duty would come in and spray.  He also stated when the mold was sprayed or the inmates clean it "we'll wash it of and it'll be back within a week, week and a half."  *Id.* at 33.

Plaintiff stated there was no schedule for receiving cleaning supplies and usually once a week, the inmates would refuse to go in the cells, refuse count time or refuse to give food trays back so MCDC officers would bring them cleaning supplies.  *Id.*  at p. 25.  Plaintiff also states occasionally cleaning chemicals would be brought to the inmates two to three times a week.   *Id.*  Plaintiff testified the inmates offered to clean the shower themselves if the officers would give them supplies, but the MCDC officers told them they were short-staffed and could not do it at the moment.  (ECF No. 26-6, p. 49).  Plaintiff stated he believed if the inmates could regularly get the chemicals it would be sufficient to take care of the mold.  He also testified after he and other inmates asked Defendant Adams for chemicals, he would provide them.  *Id.*  Plaintiff also stated Sergeant Hanning was the officer responsible for the cleanup and the maintenance in the shower area, but Defendant Adams was responsible for Sergeant Hanning.[2]  *Id.* at p. 50.  Plaintiff testified Defendants Runion, Walker, and Adams were the ones responsible for "nothing happening" with the mold issue because they supervised the officers that did not fix the problem.  *Id.*  Plaintiff also stated Defendant Miller had nothing to do with the mold.  *Id.* at p. 53.

Plaintiff testified he filed one grievance regarding the mold on May 1, 2018.  (ECF No. 29-

---

[2] Sergeant Hanning is not a named Defendant in this action.

6, p. 33). Plaintiff stated he waited to file his grievance because Defendant Runion promised to have the problem fixed and never did. *Id.* at p. 35.

As for his claim regarding the opening of legal mail outside his presence, Plaintiff testified Defendant Miller handed him a piece of his mail and told him Sergeant Gutherie had opened Plaintiff's letter from the Attorney General of Texas the previous evening. (ECF No. 29-6, p. 55-56). Plaintiff then filed a grievance regarding the incident. *Id.* Plaintiff stated Defendant Gutherie accidentally opened his legal mail and this was the only time his legal mail had been opened outside his presence while he was incarcerated at the MCDC. *Id.* Plaintiff testified his correspondence with the Texas Attorney General had to do with "signing up" to pay child support for his children and he did not experience any problems with his child support case because his mail had been opened. *Id.* at pp. 58-61. Plaintiff stated Defendant Gutherie violated the MCDC's policy concerning legal mail and that is why he sued him. *Id.* Plaintiff testified he sued Defendant Miller for the opening of his mail because she was responsible for the mail and supervised the staff who opened his legal mail. *Id.* at pp. 65-67. He also stated Defendants Runion, Walker, and Adams were also responsible for Sergeant Gutherie opening his legal mail because they were his supervisors. *Id.*

The MCDC has policies in place regarding the operation of the facility and the treatment of inmates including but not limited to a procedure for filing grievances, the cleanliness of the jail, and the opening of legal mail. (ECF No. 29-6, pp. 1-37). The MCDC's policy and procedure regarding the submission of grievances provides that complaints are first submitted through a KIOSK. Inmate "requests/concerns/complaints" are reviewed daily (excluding weekends and holidays) and sent to the appropriate person to address. Complaints are forwarded to the lowest appropriate supervisory level to address and respond. (ECF No. 29-5, p. 4). The supervisor

addressing the complaint is required to deliver a response to the inmate.  Inmates who are unable to resolve a complaint through the procedure using the KIOSK may then participate in the MCDC's grievance procedure.

The policy provides that the "Jail Warden or designee" is responsible for the coordination and management of grievance procedures.  *Id*.  Grievances are to be routed to the Warden or Risk Management ("RM") Officer.  Within thirty (30) calendar days of receipt of a grievance, the grievance shall be reviewed and if applicable thoroughly investigated.  The investigation results are then provided to the Jail Warden or RM Officer, in writing.  The Jail Warden may extend response time periods for a reasonable period if necessary.  Any extension is to be communicated in writing to the complainant/inmate.  *Id.* at p. 5.

Inmates at the MCDC are required to follow a specific procedure to submit a grievance. (ECF No. 29-5, pp. 5-7).  First, a grievance must be submitted on a Request for Administrative Remedy Form, jail form 09.01A, from a shift officer or supervisor.  Grievances are assigned a case number, an investigation is conducted, and a "sustained or not sustained finding" is rendered.  The form/grievance is then forwarded to a Lieutenant or Captain for distribution.  *Id.* at 6.  The Lieutenant or Captain then makes a copy of the form, acknowledged by the Jail Warden or RM Officer for the inmate's classification file.  The Lieutenant or Captain then completes the jail form MCSO "Inmate Acknowledgment for Grievance".  The original Request for Administrative Remedy Form [grievance] is then delivered to the inmate.  The inmate is then required to acknowledge receipt in writing on the "Inmate Acknowledgement for Grievance" form.  *Id.*

An inmate may appeal the result of the grievance findings to the Jail Warden by stating they wish to "APPEAL THE FINDINGS ON THE 'INMATE ACKNOWLEGEMENT FORM'". *Id.*  Following the disposition of the appeal, "the Request for Administrative Remedy Form shall

be returned to the RM Officer and the case number closed out.  The form is then forwarded to the Lieutenant or Captain for distribution, copies are made for the inmate's classification file, and then delivered to the inmate.  *Id.* at p. 7.

It is also the policy of the MCDC to provide staff and inmates with a clean, sanitary living environment consistent with all applicable codes, Arkansas Criminal Detention Facility Standards, and sound correctional practices.  (ECF No. 29-5, p. 22).

The policy of the MCDC regarding inmate legal mail states incoming legal mail may be opened solely for determining it is in fact legal mail and contains no contraband.  (ECF No. 29-5, p. 14).  In addition, legal mail may be opened only in the presence of the inmate and only the signature and letterhead may be read.  *Id.*

According to the affidavit of Defendant Walker, the regular maintenance and cleaning schedule at the MCDC requires inmates be given cleaning materials to clean their living areas (including shower areas) at least once per week.  Inmates are provided with a mop, broom, and a water diluted bleach solution.  (ECF No. 29-2, pp. 4-5).  Defendant Walker states the bleach is diluted so the concentration will not irritate the inmates or officers respiratory systems.  *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his initial Complaint on April 24, 2018.  (ECF No. 1).   That same day, the Court directed Plaintiff to file an Amended Complaint asserting only his claims against Defendants and to submit an application to proceed *in forma pauperis* ("IFP").  (ECF No. 2).  On May 14, 2018, Plaintiff filed his Amended Complaint.  (ECF No. 4).  His application to proceed IFP was granted the following day. (ECF No. 7).

7

Plaintiff names Sheriff Jackie Runion, Warden Jeffie Walker, Captain Golden Adams, Sergeant Allen Griffen,[3] Lieutenant Miller, and Sergeant Gutherie as Defendants in his Amended Complaint.  (ECF No. 4).  He claims mold in the shower has caused him to have a constant cold and "my nose runs all the time".  *Id.* at p. 4.  Plaintiff alleges he informed Defendants about the mold and they have "denied the conditions exist" and refused to correct the unsanitary conditions. *Id.*  Plaintiff also claims Defendants opened his legal mail outside of his presence.  He is suing Defendants in their personal and official capacities.  He is seeking compensatory and punitive damages.

On May 30, 2018, the Court dismissed Plaintiff's official capacity claims and his individual capacity claim against all Defendants for failure to respond to grievances.  (ECF No. 9). The only claims currently before the Court are the individual capacity claims against Defendants Runion, Walker, Adams, Miller and Gutherie related to conditions of confinement and the opening of his legal mail.

On July 11, 2019, Defendants filed a Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) Plaintiff failed to exhaust his administrative remedies with respect to his conditions of confinement claim; 2) Plaintiff was not housed in unconstitutional conditions of confinement; 3) Plaintiff did not suffer a constitutional violation by the opening of mail from the Office of Attorney General; and 4) Defendants are entitled to qualified immunity. (ECF No. 27).

On July 31, 2019, Plaintiff filed a Response in opposition to Defendants' motion reasserting the claims set forth in his Amended Complaint and claiming, for the first time, he was

---

[3] As previously stated, Allen Griffen was never served and therefore is not properly before the Court.

8

denied adequate medical care and the MCDC was overcrowded.  (ECF No. 31).  Plaintiff's allegations of inadequate medical care and overcrowding are not before the Court and will not be addressed in this Report and Recommendation.  On August 5, 2019, Plaintiff filed a Statement of Facts in support of his Response.  (ECF No. 32).

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)).  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing, *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.  DISCUSSION

### A.  Failure to Exhaust Administrative Remedies – Conditions of Confinement

Plaintiff alleges he was subjected to unlawful conditions of confinement – mold in the showers – at the MCDC for four months in 2018.  Defendants argue Plaintiff failed to exhaust his administrative remedies on this claim before he filed the instant lawsuit and consequently his claims are barred.

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."   Exhaustion is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules."  *Id*. at 218 (internal quotation marks and citation omitted).  The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  *Id*.  "[F]ailure to exhaust available administrative remedies is an affirmative defense, not a matter of subject matter jurisdiction."  *Lenz v. Wade*, 490 F.3d 991, 993 n. 2 (8th Cir. 2007).

The Eighth Circuit has recognized two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance procedures; or (2) when the officials themselves fail to comply with the grievance procedures.  *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (citing *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) (explaining a

prisoner is only required to exhaust those administrative remedies that are available and any remedies that prison officials prevent a prisoner from utilizing are not considered available)).

There is no dispute the MCDC had a grievance procedure in place for detainees to use at the time the incidents occurred which Plaintiff claims resulted in a violation of his rights.   (ECF No. 29-5, pp. 4-7).  The summary judgment record confirms Plaintiff filed a grievance relating to the issue of mold in the showers on May 1, 2018.  (ECF No. 29-3, p. 7).  This grievance was filed six days after Plaintiff filed his original Complaint and did not mention any of the Defendants. The MCDC's administrative officer responded to this grievance on May 16, 2018, one day after Plaintiff filed his Amended Complaint.  The record also reflects on May 2, 2018, Plaintiff filed another grievance directed to Defendants Walker, Adams and Miller concerning various living conditions including dirty blankets, a leaking ventilation system and roof, a rusty bean chute and black mold in the shower.  (ECF No. 29-3, p. 8).  Defendant Adams responded to this grievance on May 17, 2018, two days after Plaintiff filed his Amended Complaint.

As previously mentioned, the MCDC's grievance procedure requires an inmate to submit a grievance through the kiosk and then fill out additional forms if the grievance is not resolved. Based on the summary judgment record it is clear Plaintiff did not comply with the MCDC's grievance procedure before he initiated his lawsuit.  Not only were his grievances submitted after he filed this lawsuit, MCDC officers responded to each grievance after Plaintiff filed his Amended Complaint, and Plaintiff did not continue to pursue the grievance procedure after using the kiosk.

Finally, Plaintiff has not alleged any of the Defendants prevented him from utilizing the grievance procedure or failed to comply with the procedure itself.   Therefore, neither of the exceptions to the PLRA's exhaustion requirement apply.  Accordingly, I recommend Defendants'

summary judgment motion regarding Plaintiff's condition of confinement claims be dismissed without prejudice:[4]

### B.  Opening of Legal Mail

Plaintiff alleges Defendant Guthrie opened his legal mail on one occasion while he was incarcerated in the MCDC.  Plaintiff also claims Defendants Runion, Walker, Adams and Miller are responsible for Defendant Gutherie's actions because they supervised him.

Inmates have a First Amendment right of free speech to send and receive mail.  *Hudson v. Palmer*, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners'Union*, 433 U.S. 119, 125 (1977).   "Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence."  *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001).   "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution."  *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003).

In the prison context, "[p]rivileged prisoner mail, that is mail to or from an inmate's attorney and identified as such, may not be opened for inspections for contraband except in the presence of the prisoner."  *Gardner v. Howard,* 109 F.3d 427, 430 (8th Cir. 1997).  (quotation and citation omitted).  However, the Eighth Circuit has "never held or suggested that an isolated, inadvertent instance of opening incoming confidential legal mail will support a § 1983 damage action."  *Beaulieu v. Ludeman,* 690 F.3d 1017 (8th Cir. 2012) quoting *Gardner,* 109 F.3d at 431.

---

[4] Claims that are dismissed for failure to exhaust administrative remedies should be dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

Instead, the Court has found that "an isolated incident, without any evidence of improper motive or resulting interference with the inmate's right to counsel or to access the courts, does not give rise to a constitutional violation." *Id.* To assert a successful claim for denial of meaningful access to the courts, an inmate must demonstrate that he suffered prejudice from the "inadvertent opening of legal mail." *Id.*

Moreover, "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (citation and internal quotation marks omitted). The law is clear there is no respondeat superior liability under 42 U.S.C. § 1983. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676-677 (2009); *Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999).

At the time of the events in question, Defendant Walker was the Warden at the MCDC and Defendant Runion was the Sheriff of Miller County. General responsibility for supervising a detention center is insufficient to establish personal involvement. *Reynolds v. Dormire*, 636 F.3d 976, 981 (8th Cir. 2011). In addition, there is no evidence Defendants Miller or Adams were involved in or even present when Defendant Gutherie opened Plaintiff's mail. Therefore, Plaintiff's claims against Defendants Runion, Walker, Adams and Miller fail as a matter of law and I recommend the claims against them based on the opening of Plaintiff's mail be dismissed with prejudice.

As for Defendant Guthrie, the summary judgment record confirms he accidentally opened a piece of Plaintiff's mail on one occasion. For purposes of this Report and Recommendation the Court will assume, *arguendo*, the letter to Plaintiff from the Texas Attorney General regarding

paperwork he had filed to begin making child support payments to his children constitutes legal mail. Even so, Plaintiff's claim fails because he has not alleged there was any improper motive on the part of Defendant Gutherie and Plaintiff admits he did not suffer any injury or prejudice from the opening of his legal mail. *See e.g., Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (claim fails without evidence of improper motive or resulting interference with inmate's right to counsel or access to courts).

In addition, Plaintiff's argument that Defendant Gutherie violated his rights because he failed to follow the MCDC's legal mail policy is without merit. Violation of a prison policy alone does not give rise to section 1983 liability. *See Gardner,* 109 F.3d 430. Accordingly, Plaintiff has failed to state a claim against Defendant Gutherie for a violation of his rights based on the inadvertent opening of his legal mail on one occasion. I recommend the claim against Defendant Gutherie be dismissed with prejudice.[5]

### V. CONCLUSION

For the reasons stated above, I recommend Defendants Runion, Walker, Adams, Miller, and Gutherie's Motion for Summary Judgment (ECF No. 27) be **GRANTED and all remaining claims be dismissed.** Specifically, I recommend Plaintiff's condition of confinement claims against Defendants be **DISMISSED WITHOUT PREJUDICE.** I recommend Plaintiff's claims against all Defendants based on the opening of his legal mail be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely**

---

[5] Because the Court has found Defendants did not violate Plaintiff's constitutional rights it is not necessary to address the issue of qualified immunity.

14

objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 11th day of October 2019.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE

15